We'll hear argument first this morning, Case 18-1432, Nasrallah v. Barr. Mr. Hughes? Mr. Chief Justice, and may it please the Court, when Congress enacted the jurisdiction-stripping provision in 2C, it expressly defined the key term, order of removal. It is an order that finds an individual deportable or orders deportation. A CAT order does neither, and the government does not disagree. CAT relief is temporary, applicable only to the country where an individual is likely to be tortured or killed. If CAT relief is granted, the removal order remains enforceable. As the government says, a grant of withholding or deferral leaves the final order of removal undisturbed. When Congress enacted 2C, it also stripped jurisdiction of expedited removal orders. This is Section 2A, reprinted in the government's brief at page 4A. It bars judicial review of, quote, any individual determination or any other cause or claim arising from or relating to the implementation or operation, end quote, of an expedited order of removal. That broader language expanded jurisdiction-stripping beyond the removal order itself, but Congress did not use that broader language in 2C. If none of this carries the day, and if some ambiguity remains, the presumption in favor of judicial review of administrative agency action would do the work. Judicial review of administrative agencies is an essential part of the Constitution's separation of powers. Congress designed CAT relief to be available when all else is stripped away. Congress knowingly rendered those with criminal convictions eligible for protection from likely torture or death. By its plain terms, 2C does not bar review of a CAT claim. Ultimately, the CAT claim does not qualify as an order of removal. Again, the government doesn't contend that it fits within the clear statutory definition. And I don't think it can, because the CAT relief comes temporarily after, in the proceedings, the order of removal is entered. That's both of them. Ginsburg. Do you agree that, assuming that review of the BIA fact-finding, assuming that it's available, wouldn't that review be highly deferential to the BIA? Yes, Your Honor. It would be for the substantial evidence review that would govern in circumstances when 2C does not apply. So I agree there is deference to the BIA, but deference doesn't mean there's no judicial review. It just is the appropriate deferential standard that would apply across the board of judicial review of administrative agency fact-finding. Do you agree that your CAT claim is covered by the so-called zipper clause? So I think there is an open question, Your Honor, if the zipper clause extends here. Footnote 2 of Jennings suggests that the zipper clause might not apply in context of asylum, and I think this would be similarly qualified. But I'm willing to assume for a moment, even if the Court were to think that the zipper clause of B-9 applies to the CAT claim, I don't think that's any problem for our position. I think the zipper clause can be thought of doing two potentially different things. The first thing it can do is, consistent with other provisions, both in FAR and A-4, underscore that the various limitations of Section 1252 can be said to apply. That's one thing. Well, what about the language of the zipper clause and a comparison of the language of the zipper clause with the language of the criminal alien bar? The zipper clause says that all questions of law in fact arising from an action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available and this is what may be important, only in judicial review of a final order under this section. So if your CAT claim is covered by the zipper clause, that claim can be reviewed only in judicial review of a final order under this section. And the criminal alien bar says that no court has jurisdiction to review any final order of removal. So if you put those two things together, why isn't the conclusion that the criminal alien bar prohibits review of your CAT claim? So two things about that, Your Honor. Let me say at the beginning, this is not an argument the government advances, of course. So this is not an argument that the government has endorsed, and I think that's for good reason. So two points. One, to say that this is part of the review of the final order of removal is not problematic for us. We don't resist the conclusion that 2C applies. The question is, what work does 2C do when 2C applies? And I'll unpack that for a moment. My second point, however, is that A-4 is later in time than B-9 of the zipper clause, and it was specifically written because there was a jurisdictional gap that existed after FARA. In the Real ID Act, Congress sought to foreclose the suspension clause problem, which led to habeas actions in the district court, and it led to a broader provision in A-4 to ensure standalone jurisdiction. Alitoson Well, all this is very complicated, but I don't know that that answers the question about what the pretty clear meaning of the statutory language is. The zipper clause, to me, you'll tell me, these statutes are very complicated, so maybe I don't understand how they fit together. But the zipper clause seems to me the embodiment of the same sort of rule that applies in ordinary civil litigation with respect to a review of a final decision of the district court. So you take an appeal from the final decision of the district court, but that permits review of everything else leading up to the final decision. And the zipper clause seems to do the same thing. It says that everything that arises in this proceeding is reviewable only in review of a final order of removal. And so, therefore, your CAT claim is reviewable only in review of a final order of removal. So the title, again, is Consolidation of Questions for Judicial Review. And I agree with Your Honor that when the CAT claim occurs in such circumstances where there is a final order of removal, if B-9 applies, it has the operation. It's the same effect as A-4 and FARA to say those two things occurred together. What happens is you get review of the final order of removal to the extent that review is allowed. You also, though, independently then have review of the CAT claim. And I think the critical question is what work does 2C do? 2C bars courts from engaging in the affirmative act of reviewing the final order of removal. The key textual question here is when 2C bars courts from engaging in that conduct, what is the conduct that 2C bars courts from doing? It's reviewing the final order of removal. Alitoson And nothing else? Not all of the preliminary decisions, all of the earlier decisions that lead to the final order of removal? Fisher I think the merger principle this Court identified in Chadha is the correct one, which is to say anything on which the final order of removal is contingent would appropriately merge into that and be governed by 2C. So all of those preliminary things Your Honor references would be subject to 2C. The ultimate question is a practical one, is, is the nature of the argument in the petition for review, is it one that challenges the validity of the final order of removal? If the answer to that question is yes, it challenges the validity of the final order of removal, we agree 2C applies in those circumstances. The CAT order, however, does not challenge the validity of the final order of removal, and the government underscores that point. They say you win your CAT claim, the final order of removal is undisturbed. That's because it's relief that is applicable only to one country, the country that's identified in the CAT order. It's relief that's temporary. It can be undone later in time if, for example, country conditions change. And third, the government says because that order, the final order of removal remains presently effective, they can continue to detain individuals who have been granted CAT relief on the basis of the underlying order of removal that the government says means. Alitoson Well, let me approach it one other way. Under the provision dealing with CAT claims, you can file a petition under 1252, right? Fisher Yes, Your Honor. Alitoson And what is the nature of the petition that you can file under 1252? Fisher There are two independent ways. One is a section 2242d provision under FAR that was what was initially enacted in the 1998 enactment. That is tethered into a one-couples-together review of the final order of removal with the petition for review of the CAT claim. That, though, led to a problem where if there couldn't be judicial review of the final order of removal in what I would call a standalone CAT context or where 2C, this was prior to 2D, where 2C would strip jurisdiction, there led to a problem where there would be circumstances in which FAR 2242d did not supply jurisdiction. Alitoson Isn't it the case that the only kind of petition that you can file under 1252 is denominated a petition for review of a final order of removal? Fisher I think A-4, Your Honor, provides a separate basis for someone to file a petition. That was the Real ID Act solution to this jurisdictional gap I referenced, which led to habeas issues. And the text of A-4 provides a petition for review. And let me say off the bat, there is some awkward language in here, but I think I'll explain why it's not so awkward in context. A-4 says a petition for review is, quote, the sole and exclusive means for judicial review. Alitoson A petition for review under 1252. It has to be under 1252. Fisher Yes, Your Honor. Alitoson And you agree, I take it, that all of the requirements for a petition, including a CAT petition, that are set out in subsection B apply. All of those requirements apply. Fisher And, Your Honor, I'll say 2C applies. I'll say everything in 1252 applies. Alitoson If you say that all of the requirements in subpart B and subsection B apply, subsection B sets out the requirements for a petition for review of a final order of removal. Fisher What happened, Your Honor, this – I appreciate this is a bit of a Franken statute here, but Congress enacted A-4 after all of the requirements in B had already been enacted by AEDPA and ARERA. So what Congress did in A-4, which came later in time, by referencing this section, I think it's fairly red to say we are putting A-4 in later and we're incorporating, saying you can't get around the venue provisions or timeliness provisions or standard of review provisions by incorporating all of the requirements of this section. And again, my point that I said a moment ago, I don't resist that we could say 2C generally could be thought to apply. The question is, when it applies to a petition under 1252, what work does it do? And the work it does is answered by the text of 2C. It very clearly bars the act of reviewing final orders of removal. It doesn't bar review of separately cat claims. This – Alito Does the cat order at least temporarily invalidate the order of removal as to a particular country? Fisher No, Your Honor. Alito At least in common parlance? Fisher I don't think it does, because it remains effective, and if the cat order is removed, the individual can still be sent to that country. But to get technical about what the definition requires under A47, it's either the finding of an individual being deportable or being order-deported. Those are both binary determinations. Either the individual is found deportable or not, and either the individual is found order-removed or order-deported or not. And again, the government doesn't agree – disagree with us. In the Guzman-Chavez cert petition at page 10, they filed this after their brief. They say, quote, withholding does not address whether an alien is order-removed. It's the government's position that whether an alien is order-removed, that binary determination, is made by the final order of removal, not the cat claim. Breyer And they can't – Breyer Sorry. Go ahead. What – two things here seem to be difficult for you. I'm not sure you'll explain why they're not. In 1321, which is rather like the Zipper Clause, it says you can't review a cat decision except as part of the review of a final order of removal. And then in the two provisions, A4 and A5, it says continuously the review in accordance with this section. Now, in accordance with this section, in respect to – as you know, I mean, in respect to orders of removal means you can review facts. We have the mixed question in front of us. And not – you cannot review facts, for sure. And okay. And so why can you review here, particularly when it said earlier and later in the You can only review this except as part of the review of a final order of removal. Well, if you have a fact argument, see, the judge made a mistake of a fact, you know you can't get that reviewed as part of a final order of removal review. So how can you say here they can't? So two answers to that, Your Honor. The second one, which I'll get to, is the A4 expanded beyond FARA because there was a problem with FARA. But starting with just with FARA, the except for as part of the review of. What that says is the way that you get review of the Catt claims, you have review of the final order of removal. You have that. That's the A1-1252 petition. And as part of that review, you have review of the Catt claim. What that doesn't say is that the Catt claim itself is the final order of removal. All that does is, like B9, the zipper clause, consolidates these two different sorts of arguments into the same vehicle, into the same petition for review. And I agree, they're all subject to 1252 limitations. But take, for example, the limitation in 2b. We agree the limitation in 2b applies. That's the limitation that says that if there is a statutory conferral of discretion on the agency, there's no judicial review of that. It applies in this circumstance. It just doesn't do anything because there's nothing discretionary about this determination. That's the same argument we make with respect to 2c. We don't resist saying that it applies. It just doesn't do anything to the part of the petition for review that challenges the Catt claim. But my second point is, if the Court disagrees with the understanding of FARRA, and I think that's right, but that takes us to the jurisdictional gap that Congress found, because we know that Congress in the Real ID Act did not want courts entertaining habeas actions in the district courts. It did not want the two layers of review. It wanted these matters going to the courts of appeals. In order to ensure that there was not a jurisdictional gap, that's where Congress created A-4. And when I was reading the language of A-4, it does have the sole and exclusive language, but A-4 is written in just the same terms as A-1. A-1 is the provision that the government points to as providing judicial review over the final order of removal. The way the language that A-1 uses is, quote, judicial review of a final order of removal is governed only by, and then it cites the Hobbs Act. It's a sort of curious way of conferring jurisdiction, not to say there is judicial review, but it says judicial review is governed by the Hobbs Act. A-4 says the exact same thing. It says the means of judicial review is a Section 1252 petition. We think that A-4 confers jurisdiction in just the same way that A-1 does. We know that Congress had to do this in order to fix the suspension clause problem that was at the heart of the case. Alito, you agree there's no review in the cancellation of removal context? The ---- Cancellation of removal? And that's under the 1229B. That's a 2C argument, yes, Your Honor. That 1229B goes to whether or not there is a final order of removal entered. If somebody wins cancellation of removal relief, that means there simply is no final order of removal, and that fits within the definition of A-47. And the denial of cancellation of removal? Yes, Your Honor. The factual components of that? That is part of the final order of removal. That is all well within, because if somebody challenges the denial of cancellation of removal relief for those who still have 212C relief eligible, any of those things, the upshot of their argument is the final order of removal that was entered against me should be vacated. That's the rule. How about statutory withholding, which is much more comparable to the withholding at issue here? I do think statutory withholding is the one thing, in addition to cat claims, that the language is less clear there. There's not the A-4, the A-5 argument, and it's not before the Court. But I do think the logic of our argument, the only thing in addition to cat relief, I think it would. So what work does A-4 and A-5 do for you? So A-4 and A-5 is decisive textual evidence in our view that Congress understood for purposes of Section 1252, that a cause or claim under cat that's addressed in A-4 is simply not a final order of removal. That's addressed in A-5. Congress, as I mentioned a moment ago, in the Real ID Act, sought to ensure that all of the review of all of these different issues would go straight to the courts of appeals. That's why Congress created both A-4 and A-5. It created two separate independent provisions that were next-door neighbors because it knew that final order of removal, as Congress used that language in 1252, just does not encompass a cat claim. I think that's the fundamental problem with the government's argument. Sotomayor So why does it encompass statutory withholding? Why does it necessarily encompass statutory withholding? I'm not sure either of those arguments, by their plain text, encompass statutory withholding, Your Honor. I think there is potentially a gap. I think this is, to Justice Alito's point, B-9, the zipper clause would tie in an argument about statutory withholding into the review of the final order of removal. Well, I agree with you that everything comes up, under your interpretation, everything comes up to the court. That's what the zipper clause is supposed to do. What you're saying, however, is that because of the definition of what order of removal is, that if it doesn't affect the actual order, that's not barred. The factual review is not barred. That's right, Your Honor. Our ultimate position is a straightforward one of if the claim of the petition for review challenges the validity of the final order of removal, if it is and that is most things that are in a section 124. Like cancellation of removal, things like that affect that action. Yes, Your Honor. The only things that I'm aware of that do not fall, that are not swept within that are cat relief, cat withholding, and cat deferral. And as Your Honor points out, statutory withholding. In one of the briefs, I can't remember if it was yours or someone else's, there was a whole list of situations in which cat claims would be reviewed independent of the petition for renewal, independent of the decision on the removal. Yes, Your Honor. How would there be jurisdiction? I understood from your briefs that you think A-4 provides independent jurisdiction or C-4 provides independent jurisdiction. How would it exist for statutory withholding? So in those similar situations where it doesn't come up with the order of removal? I think statutory withholding is more similar, is less likely to come up in an independent circumstance than cat, so I'm not sure that those are going to arise as frequent. Why? That's what I don't understand. Well, I think the cat as being the final backstop is the sort of claim that is often seen more independently. I acknowledge, Your Honor, though, that in that narrow range of cases about statutory withholding, I agree that A-4 doesn't apply. I do think that there is not a clear answer on where statutory withholding the jurisdiction falls. I think, though, it falls with most likely within B-9, because that is an order that then would be related to the proceedings and would be swept in together. So I think B-9 would do the work there. I think ultimately, though, this has to be understood against the backdrop presumptions here. One is that there is a presumption in favor of judicial review, and second, if there was no judicial review for the withholding context, if the statutes were understood that way, there would then be the suspension clause problem that would allow independent standalone habeas actions to challenge the denial of the withholding, of the statutory withholding. Alitoson Can I just ask you, before your time expires, and I would like the government to answer this, too, what you have to say about putting aside the question of waiver, about the Eleventh Circuit's holding that the criminal alien bar applies at all in this case, since the ground for removal in this case is 1227A to A-1, right, not A-2. So if they're wrong on that, there's really no reason for us to get to this other issue. And the second part of that question is, although they have said, they have held that the criminal alien bar applies to an alien who has committed a crime of moral turpitude, why wouldn't that fall within 1182A-2, which is another basis for the criminal alien bar? So the first part, what we do with that, two quick answers is, one, there's certainly no basis to dig or not, in this case, or not resolve the question presented. This is simply a second defect that's been found below the government's positions we've waived. We're right about that. That would just mean it doesn't, it's not an obstacle to the question presented. I do think it is within the Court's discretion, if it wishes to find plain error or to address the 1227 question, in the alternative of deciding the question presented. That's, of course, within the Court's discretion, but it's not an issue that we've presented. As to Your Honor's question about why it doesn't fall within 1182, that's for two reasons. One is the reasoning of the Seventh Circuit of Wanderoo. 1182 just is not applicable in these circumstances because it's about admissibility and it applies to criminal convictions that are prior to the alien's technical admissibility. And the Seventh Circuit of Wanderoo explains that when the crime of conviction is post-admission of the noncitizen, 1182 doesn't govern in that circumstance. That's the Wanderoo analysis. Levy-Gonzalez, the Fifth Circuit, takes a different approach. It also agrees that a single-crime moral turpitude is not triggered, and it focuses instead on the text of 2C, because when you look at the back-end portion of the text of 2C, the language is a bit unclear, but it references that there are multiple crimes of moral turpitude in that 2C, which is tying into the Romanet II portion of the 1227, which says there has to be two or more crimes. So I think those are both the Fifth and the Seventh Circuit have provided two independent grounds for arriving at the government's position, which we agree with, that 2C shouldn't apply for the separate reason when it's a single-crime moral turpitude. Can you address the government's reliance on FODE and why that decision doesn't carry forward? A few things about FODE, Your Honor. First, we think the holding in FODE is completely consistent with our position and the language in FODE. So the only issue in the language of FODE where it does sweep more broadly, Congress defined the key term, order of deportation, after FODE, and it defined it in a way that's completely consistent with FODE's holding, but is not consistent with FODE's broader language that absolutely anything that occurs in a removal proceeding falls within the order of deportation. If we were with that one sentence in FODE that reads more broadly, it could be a problem, but that's not the case. Congress specifically defined the key term after FODE, and that statutory definition is necessarily what is going to govern here. In FODE, the Court said we have to interpret what's an ambiguous term and we're going to resort to policy, knowing that there are multiple plausible interpretations. Here, there's no resort to that sort of policy sentence because Congress has filled the gap. But even if we look to that underlying policy, there the policy was ensuring that there would be consolidation in one court, so you wouldn't have some actions in the district court and some in the courts of appeals. Congress has taken care of that policy issue, and now everything goes to the courts of appeals. And the final point about FODE is FODE was just picking where judicial review was going to be, not whether or not judicial review would be fully stripped. This is a case in which jurisdiction is whether or not there is Article III jurisdiction at all, and that very strong presumption here was simply not applicable in FODE. Thank you, Your Honor. Roberts. Thank you, counsel. Mr. Garnieri. Mr. Chief Justice, and may it please the Court. In Section 1252A2C, the term final order of removal encompasses the various administrative decisions that are made in the course of removal proceedings, including the denial of an alien's claims for relief or protection from removal. That has been the established understanding of the judicial review provisions of the INA since this Court's 1963 decision in FODE against INS, and Congress incorporated that same understanding into Section 1252 when it enacted IRIRA in 1996. Now, the specific claims at issue here arise under the Convention Against Torture, but CAT claims are no different in this regard, and we know that in part because in the Foreign Affairs Reform and Restructuring Act of 1998, Congress specified that CAT claims would be reviewable only as, quote, part of the review of a final order of removal. And because CAT claims are reviewable only as part of review of a final order of removal, they are subject to Section 1252's limits on final order review, including specifically the criminal alien jurisdictional bar in 1252A2C. Petitioner's contrary view, which no court has ever embraced, rests on the premise that the denial of a CAT claim is not the same thing as an order of removal, but the denial of a CAT claim is an integral part of the removal order for purposes of judicial review. That is the lesson of FODE and its progeny, and that is the understanding of the statutory scheme that Congress incorporated into 1252. And as I just explained, that's precisely how FARA describes review of CAT claims. Petitioner's argument is also self-defeating, as we explain in our brief. Section 1252A1 only authorizes the courts of appeals to exercise Hobbs Act jurisdiction with respect to final orders of removal. If a CAT claim is not reviewable as part of a final order of removal, it is not reviewable at all. Finally, as Justice Sotomayor's questions illustrated this morning, Petitioner's theory can't make sense of the judicial review of claims for statutory withholding of removal. That is, claims for withholding of removal predicated on a fear of persecution rather than a fear of torture. Everything that Petitioner says about what makes CAT claims – what makes a CAT claim distinct from an order of removal could equally be said for statutory withholding claims. And yet we know statutory withholding claims are reviewable as part of the final order of removal answered at the conclusion of the proceedings. Two questions. Take them in whatever order you want or ignore them both. First, what do we do with the fact that the government has repeatedly represented that a CAT order is not a final order of removal and that a final order of removal remains effective whatever happens to the CAT order? So that's one. Number two, can't something be part of a proceeding and yet be different from the one – two claims can come in one proceeding, right? And we often have compulsory counterclaims, for example. And why couldn't Congress want a system in which, for efficiency purposes, two distinct questions were presented to the Court at the same time without indicating that they are the same issue? Justice Gorsuch, if I may take your second question first. We think the language of FARA is – quite specifically identifies how Congress understood CAT claims to be reviewable in this context. The relevant language is reproduced at page 18A of the government's brief, and as I quoted earlier, Congress specified that CAT claims would be reviewable only as part of review of the final order of removal, not as a separate proceeding that would occur at the same time as review of the final order of removal. I understand. Exactly. It's not a separate proceeding, but that doesn't necessarily mean it's the same thing as a final order of removal, does it? Well, no, I agree with that. Okay. So you agree that one can have two distinct things in a single proceeding? Section 1252 prescribes a mechanism whereby aliens can seek judicial review of what occurred in the removal proceedings by petitioning for review of the final order that is entered at the end of those proceedings. Since this Court's decision in FODE, the – the uniform understanding of how judicial review works in this context is that when the alien petitions for review of that final order, which concludes the administrative proceedings, then this – the various other decisions that were made in the course of the removal proceedings are also reviewable as part of the final order of removal. FODE described those decisions as an integral part. But you agree it's not the same thing as – FARA uses the same language. You'd agree that the CAT order is not the same thing as a final order of removal? It – it can be distinguished from the order by which the immigration judge orders the alien to be removed. And as – as Mr. Hughes has stressed, the order of removal remains valid even if the alien is granted CAT protection. Once the government concedes, I think it must, right, that – that a CAT order is distinct from, is not the same thing as a final order of removal, why isn't that seriously problematic? Turning to the first question I asked you. Justice Gorsuch, we – we think it is part of the final order of removal. It is an integral and constituent part of the final order of removal. That – that is the Court's FODE decision. Part of and integral to but distinct from. How is that? It is distinct from the order of removal in a limited sense. It sounds pretty metaphysical, counsel. I mean, it's – it's integral to and part of but distinct from. Well, it's – It's like the Holy Trinity. One could say, Justice Gorsuch, one could make the same observation with respect to the review of final decisions of the district courts. In the course of litigation in district court, a district court may make a variety of decisions that culminate in a final decision. The final decision under the – the statutory provision for review of final decisions of the district court, it has been universally understood that review of the final decision also encompasses review of the various decisions made earlier in the course of the district court. Can I ask you a – That merge into the final decision. It's a similar scheme here. I mean, I think that that's very different. All of those decisions are ones leading up to the final decision and the final decision is contingent on them. By the government's own practice and procedures, the CAT scheme does not have that relationship to the final order. I mean, every time you issue a final order or – there's the final order. And when the CAT question comes up, the government says, this does not affect the It certainly does affect the final order, Justice Kagan, in this sense. To take this case as a specific example, Petitioner in this case was ordered to be removed to Lebanon. His CAT claim, the gravamen of his CAT claim is that he cannot be removed to Lebanon because he fears that he would be tortured there. If he were to succeed on his CAT claim, the existing order that he be removed to Lebanon could not be executed. But the order is for removal from this country. And what the CAT claim does is essentially to put a kind of external constraint on how to implement that order. But the order, as the government repeatedly says when it does this, remains in effect. The person is ordered to leave this country. Well, respectfully, Justice Kagan, the order is more specific than that. And, in fact, the implementing regulations require that the country of removal be designated in the order. And if you look at page 47A of the Petitioner Appendix, there is an example of what these orders look like. And you will find that here the order specified that Respondent, meaning the Petitioner in this Court, be removed from the United States to Lebanon. Breyer. Why is this? Why? Analogize it, if you want. Say it's just like a final order of a district court coming up for review. Fine.  That doesn't mean you apply to the same standard for all of them. If it's a witness complaint, there's a credibility standard that's more almost entirely up to the district judge. If it's fact-finding, it's another thing. If it's an application of law, it's another thing. So fine. It's part of the review of the final order. But here the question is, should they review facts? And that's a different section, which says you can't review facts in the final order. And what they say to that is, look, if Congress wanted all these things to apply, it wouldn't have written two separate, four and five. They wouldn't have written two separate provisions. That's a pretty good argument. And you have not a bad argument on the language. I agree with that. So into this breach steps the presumption in favor of reviewability. Now, there we are. And what do you have to – I would like to hear what you have to say about that. MR. BARROWS. Sure. Justice Breyer, we have two responses about the presumption of the availability of judicial review. First, of course, we do not think the statutory text is ambiguous. We think Congress unambiguously foreclosed judicial review of final orders of removal with respect to criminal aliens. Second, independently of that, we don't think the presumption in favor of judicial review can do any work in this case for the following reason that is specific to this particular case. The term the Court is being asked to interpret here is the term final orders of removal. That appears in both A2C, which is the limitation on final order of review, and also in A1, which is the provision that affirmatively authorizes judicial review. And so a narrowing construction of the term final order of removal would sort of give with one hand and take with the other. Breyer. Why is it different from what I've seen 10,000 times? In a court of appeals, we are reviewing a piece of paper called a judgment. And it is the order of that judgment that we review. But when we review it, we have like 10 different standards that you apply to different aspects, depending on what the argument is. All right? Justice Breyer, when Congress enacted the criminal alien jurisdictional bar in A2C, it used the term final order in the same sense that it used that term in A1. And under FODE and its progeny, that term encompasses the various other determinations made in the course of the same removal proceedings. Now, it's true that we pledged to our treaty partners that we would not return a person to a place where the returnee would be likely subject to torture. Does that figure into this analysis at all in how you treat a CAC claim that we have undertaken and we want other countries to undertake the same pledge, that people will not be returned to places where they are subject to torture? No, Justice Ginsburg. I don't think so. The United States has determined that Petitioner is not more likely than not to be tortured if he is returned to Lebanon. The issue in this case is simply whether he is entitled to an additional round of judicial review of the agency fact findings. But he will not be tortured. That is the determination that the United States has made. Is there any impediment, and this is very limited, he can be deported anyplace else in the world, just not to Lebanon. Is there an impediment to deporting him to some other country? No. There is not currently an impediment. The Immigration and Nationality Act itself specifies the other countries to which the alien may be removed. There is an ordering in the statute about which alternative countries would be the country of removal in a case in which the country of citizenship, he cannot be removed to the country of citizenship. Can I pick up on just one? Those are whether he's, where he is a country of citizenship, where he was born, where he has a residence. Would any of those apply to Mr. Nasrallah? I don't know that there have been any administrative proceedings in this particular case to identify an alternative country of removal. So there has to be a country that would accept him, some country with which he has no connection would have to accept him. That's correct. If I could return to a point that I was trying to make. Can I pick up on Justice Breyer's questions for a minute in thinking about how Congress structured this statute? The factual components of the order of removal often are not going to be seriously disputed because it will be convictions for prior offenses. And you've gotten judicial process with respect to those state convictions usually. And that was part of, I think, Senator Abraham's analysis back when this was put in. With respect to a CAT claim, however, the factual components will not have been previously litigated and indeed will be very important to the CAT claim. So why would Congress have wanted to preclude judicial review of those highly important factual components of a CAT claim? Justice Kavanaugh, the same could be said with respect to inalienable claims for asylum or to statutory withholding of removal. In both of those cases, the sort of the factual predicate for the claim will not have been previously adjudicated in a criminal proceeding. And yet Congress unmistakably made a judgment that aliens who come to the United States and commit crimes should be removed from the country as expeditiously as possible. And as part of that judgment, Congress precluded review. With respect to criminal aliens, Congress limited the review available of a final order of removal, which, as I have said, is a term that encompasses things like claims for asylum and statutory withholding. I just don't see any language that says the factual components of a CAT claim, which correct me if I'm wrong, but those are going to be highly important in a lot of these cases, that we, Congress, don't want judicial review, even the deferential judicial review that Justice Ginsburg identified. We don't even want that of the factual components of the CAT claim. Well, of course, A2C itself broadly precludes review at all. And then Congress later added A2D as an exception to permit review of questions of law and constitutional claims. Both of those provisions are written to deny review of the entire final order, which encompasses things like dissent and negotiation. Well, that just begs the question of whether that encompasses, as Justice Gorsuch says, the CAT claim. But there's nothing specific to say as to CAT claims. And this doesn't defeat your argument, but it is a problem. There's nothing specific as to CAT claims that say we, Congress, don't want any judicial review of the factual components of CAT claims, which would have been a very serious decision. That is, Congress never used those precise words. But in the Foreign Affairs Reform and Restructuring Act of 1998, Congress did direct that CAT claims would be reviewable only as part of the review of a final order, which, in turn, should be read against the backdrop of Section 1252 and Section 1252's limits on final order of review. Congress also reinforced those limitations in the Real ID Act of 2005, which added subsections A4 and A5. Don't you think part of that was meant to get everything straight to the Court of Appeals as opposed to the district courts? So that's what that was about? Yes, certainly. But this is a complementary part of the same project. What Congress was intending to ensure here was that review of any CAT claims occur only pursuant to Section 1252 and subject to the limitations Congress had already specified in Section 1252. And I think FARA is a problem for Petitioner here in another sense as well, and that is that FARA, which was enacted again in 1998 after the statutory definition on which Petitioner now relies, FARA clearly contemplated that CAT claims could be reviewed as part of a final order of removal. That really makes no sense on Petitioner's understanding of the statutory scheme, because Petitioner claims that there was a jurisdictional gap that Congress didn't solve until the Real ID Act of 2005 when it added A4 to the statute. But, in fact, we know from FARA that Congress anticipated that CAT claims would be reviewed as part of final order of review. Breyer. No, it doesn't say that. That's why it's difficult. It says you can't review them except as part of the review of a final order of removal. And that means, I take it, that we don't really know, to be honest, whether when you review this as part of the review of the final order of removal, did it mean to pick up all the standards there in, you know, that apply to review of a final order of removal, or was it just talking about how you proceed, don't go to five courts, go to the one court, and do it at the same time, you know, et cetera? I can't get clear in my mind, and you have an interest in persuading me one way or the other, which it really means. Justice Breyer, we understand that to mean that Congress anticipated that CAT claims would be reviewable only as part of and subject to the limitations on final order review. That also was the administrative understanding of the statute. The implementing regulations in 1998 echoed FARA's limitation, and the preamble to the rulemaking, the Attorney General explained that she understood that CAT claims would be reviewable only subject to the existing limitations in section 1252. So we think the rulemaking history also bolsters our understanding of the statute here. What was the nature of that review between 1998 and 2005? Because I'm a little murky on the chronology and how that would have worked in that, those years. Sure. So with respect to non-criminal aliens, aliens for whom the criminal alien jurisdictional bar is, was not a problem. Let's talk about criminal aliens. Well, for criminal aliens, as a result of this court's decision in INS against St. Cyr. Well, before St. Cyr, the matter was, was somewhat unclear because on its face, the criminal alien jurisdictional bar, as it was then written, would preclude review of all final orders. There'd be no review at all, right? That's correct. Including for CAT claims. Doesn't that pose a problem, given that FARA seemed to suggest that there would be some review? Well, but for non-criminal aliens, there was, review was occurring in the ordinary course. An alien who had a CAT claim that was denied in removal proceedings would file a petition, and the petition for review would challenge the final order, including the denial of the CAT claim, and the courts of appeals were reviewing cases like that. Now, for criminal aliens, the facts on the ground were somewhat different, because the criminal alien jurisdictional bar precluded circuit court review entirely, at least for non-constitutional claims for criminal aliens. And so as a result of this court's decision in INS against St. Cyr, the courts of appeals determined that FARA section 2242d, which is the provision I've been emphasizing this morning that makes CAT claims reviewable only as part of the final order removal, the courts of appeals concluded that that section did not itself preclude habeas review of CAT claims under the logic of this Court's decision in St. Cyr. Is this right? I'm trying to get this straight. I'm just trying to get it straight in my mind. All right. At one point, you had the section which says, look, person under a final order of removal, if you're a criminal, you can't appeal at all. And you also had the preexisting section that said to the CAT person, you can get review only as part of the review of a final order of removal. So if you couldn't get it all, you couldn't get it here, it seems, because there was no part. There was no final order of removal, so it couldn't be part of it. Then later on, they had this other section say, wait a minute. You can, Mr. Criminal, and that's because of St. Cyr, perhaps, you see, you can get review of a final order of removal. And now we can get review of our CAT claim, because there's something to attach it to. So the question is, did we, in fact, in saying that, we being Congress, mean that the condition that limits the final order of removal also limit the appeal of the CAT claim, which is no review of fact? And that's why they're saying it's a different thing. This was just a vehicle. And you're saying, no, it isn't a vehicle. It's part of, it's part of. Okay. I got about that far this morning. And that's why I got to then think, well, there is this presumption in favor of reviewability. That's how I got there. I guess you could tell me, forgetting the reviewability presumption, am I right or wrong so far? Mr. Breyer, if you examine the legislative history. Was I right or wrong, because I'm not asking for an argument. I just want to know if my analysis is right. We don't agree with Petitioner's account of the history that led to the Real ID Act. According to Petitioner, in the Real ID Act, Congress understood itself to be solving a perceived lack of jurisdiction in the courts of appeals to review CAT claims. That is unmistakably incorrect. If you examine the legislative record that preceded the Real ID Act, what Congress understood itself to be doing was softening or limiting the scope of the criminal alien jurisdictional bar in order to solve the problems that this Court identified in St. Cyr. So Congress fixed the problem, as it were, by permitting review of legal claims and constitutional claims for criminal aliens, and then amending 1252 in numerous places to make clear that there would be no habeas district court proceedings to review any of the determinations that occur in the ordinary removal proceeding, and that 1252 would be the sole and exclusive means for aliens to obtain review of those determinations in the courts of appeals, including and subject to the limits set forth in 1252. Now, as I began to say earlier, we do think that statutory withholding of removal is a very hard case for Petitioner here, because everything that Petitioner says about why CAT claims are different than a final order of removal could equally be said for statutory withholding claims. And of course, in FODE, this Court itself identified withholding of removal as the kind of decision that, when it occurs in the removal proceeding, is reviewable as part of the final order that's entered at the conclusion of those proceedings. Every court of appeals in the country was reviewing statutory withholding claims in the years post-dating FODE and predating IRIRA. There is no evidence that Congress meant to eliminate or abrogate that practice when it adopted the definition in 1996 that Petitioner has latched on to. We think also motions to reopen would not meet Petitioner's narrow understanding of what a final order of removal is. When an alien files a motion to reopen the removal proceedings and the agency denies that motion to reopen, that is not itself a separate finding of removability or an order of removal, and yet it is unmistakably clear that the denial of a motion to reopen can be reviewed as part of final order review. This Court said as much in Stone v. INS, and the text of 1252 continues to reflect. It anticipates that there will be appellate proceedings with respect to motions to reopen. So we think both of those are a part of the same thing. Sotomayor, the problem with motions to reopen is that what you're seeking to do is to undo the order of removal, and so that fits quite clearly within your other side's theory. We still, what you haven't told me, is where the language of defining order of removal, how I read that language in the statute, it's the first definition Congress has given, where in reading that, those words, when Congress has chosen to define them, explains CAC claims, or can include CAC claims. We think the language of 1101A47 should be read in light of the many decisions that preceded it, recognizing the final orders that were made. The problem is that Congress had those decisions in front of it, and it could have chosen to write something much more comprehensive, but it didn't. It could have said order of removal, it was any order of removal, and all other decisions encompassed by it, or all other orders encompassed a part of it. But it didn't. It talked about it just as the order of removal. We think that language is naturally read to include the decisions that precede the order of removal. Only naturally read that way because we decided, I think it was Fodi. That's correct. That in terms of channeling review, we wanted everything channeled to the court of appeals. Sotomayor, this is a very different question than whether or not you're going to put in a bar that bars review altogether. Channeling and reviewing, and so Congress looked at it and said the one thing we're barring is only removal. Well, the definition, it defines a term that is, appears not only in the provisions of the statute that limit review, but also in the provisions of the statute that authorize review. As I explained earlier, section 1252a1 uses this term, final orders of removal, and there is no indication, and Petitioner has yet to explain why Congress would have wanted to exclude statutory withholding claims from reviewability. Well, according to him, maybe they didn't. I don't think he's taking a position in your favor. He's basically saying, so what? I think in the reply brief, Petitioner makes clear that if you accept his theory, that would mean that statutory withholding claims are not reviewable as part of a final order of removal. Now, in footnote 7 of the reply brief, Petitioner has tried to hypothesize some other bases on which courts might be able to review those claims, but that would be a very startling development. Now, also I think that the definition of the term that limits review, and Petitioner has yet to explain why Congress would have wanted to exclude statutory withholding claims from reviewability.         Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. And this statutory definition says what a final – what an order of removal is, says order of deportation, but nobody thinks that that makes a difference. And it says it's an order that concludes that the alien is deportable, which you agree it doesn't do. And it concludes – or it orders deportation, which you also agree it doesn't do. So you're saying, well, even though there's this explicit definition here, we should look back to a bunch of cases that were decided before the statutory definition came about, that were decided before A-4 and A-5 came about, that even when they were decided, the Court said that the language wasn't clear, and the only reason that they were deciding the case that way was because they had a policy concern about bifurcation, which doesn't exist anymore. So why would we look to those cases rather than the explicit statutory definition? Well, Justice Kagan, we do think the history that preceded this statute should inform the Court's understanding of it. We are also pointing the Court towards the explicit text of the Foreign Affairs Reform and Restructuring Act, which makes clear that Congress anticipated that CAC claims would be reviewable as part of the final order of review, which is consistent with our reading of the statutory definition, but not Petitioner's unduly narrow understanding of that term. Now, before my time expires, Justice Alito, I would like to address the question that you posed to Petitioner's counsel earlier. We do think that Petitioner has waived any argument that the court of appeals erred in applying the criminal alien jurisdictional bar. In this particular case, Petitioner did not seek rehearing en banc on that issue. Petitioner did not seek this Court's review on that issue. Now, having said that, we think the Eleventh Circuit's rule is incorrect, and ordinarily a finding of removability under Section 1227A2A1 is not itself sufficient to trigger the criminal alien jurisdictional bar, but that's of no moment for the purposes of deciding this particular case. We think the Court can decide the case on the premise which Petitioner did not dispute that criminal alien. Back to the main argument, the Seventh Circuit and the Ninth Circuit have adopted Petitioner's view of this statute, obviously big circuits with lots of cases. Are you aware of significant problems in how they've been applying substantial evidence review to factual components of CAC claims or other problems that that's generated? Your Honor, the standard has made a difference in some cases in the Ninth Circuit. There are decisions in the Ninth Circuit in which, in our view, criminal aliens were able to reverse the agency's fact-finding on appeal in circumstances in which the statute should have foreclosed that kind of proceeding on appeal. We also just, if I may simply ---- Which way does that cut, then? And doesn't that suggest there are at least the courts thought there were mistakes being made in the administrative process in those cases? Well, it's true that there are some decisions in which panels of the Ninth Circuit disagreed with the agency fact-finding, but I would just add, if I may, Mr. Chief Justice, the rule that the Seventh and Ninth Circuits have applied is not the rule that Petitioner has advocated here, and in fact, he has abandoned the reasoning of those courts. Thank you, counsel. Five minutes, Mr. Hughes. Thank you. I'd like to first begin with a point that the government made about the notion that the removal order is limited to removal only to the countries specifying the removal order. Respectfully, that's just legally wrong. The regulation is 8 CFR 1240.12, subprovision D. It does state that an immigration judge needs to identify one or more countries to which removal is to occur. But the second sentence in that provision, and I quote, So there is no need to amend or alter the final order of removal in the event of cat relief to Lebanon, even though that Lebanon specified in that order the individual   can remove the individual to any country that's specified in Section 241. The second point, the government's claims that we're removing This is just curiosity to me. Can the government change a port of deportation, assuming a prisoner comes and says my mother is in this other country, I'd rather go there? I think there Do they have to go back to the judge to get permission to do that? No, Your Honor. This regulation allows the individual to be sent to other countries in the section. This is in 1231 or Section 241. One of the countries that can be a country that the individual agrees to go to, I believe, and that is willing to accept that person. So if those things match up and they work with the government, that can be. But it's all laid out, as Justice Alito mentioned a few moments ago, about the different countries and orders that are permitted by the statute. Those are all swept within the order of removal, even if it says Lebanon on it by the regulation. The second point, the government suggests that we're wrong about the legislative or about the history of the Real ID Act. I think we're clear on the text of what A-4 does in explaining jurisdiction and the clear purpose. But again, the argument about the history, I think, is a bit misplaced, because if the only piece of legislative history that describes A-4 is in the conference report, and the conference report says that its purpose was to, quote, allow aliens in Section 240 removal proceedings to seek review in court. So the only snippet of legislative history that we have on A-4 says that the purpose of it is to create judicial review. The government's contention that we're just mistaken about the history there, I think, is a misplaced argument. This is exactly what Congress sought to do. Now, the next point, I think this is a pretty straightforward question of textual interpretation. This, in AEDPA, Congress stripped courts from doing one specific act. That's the act of reviewing final orders of removal. For all of the reasons we've described, Mr. Nisralat does not ask a court here to review the final order of removal. He asks the court to review something very different. That's the Catt claim. And we've described how A-4 and the regulations and the definition all confirm that this is not the order of deportation. The government's attempt here is to effectively backdoor in, through all of these various different provisions, a broader effect of 2C than what Congress actually wrote in 2C. But 2C was pretty straightforward on its face, because I remind the Court, in A-47, that definition, order of deportation, was enacted by Congress for the specific purpose of defining the scope of 2C. Congress said in section 440A of AEDPA, we are going to strip jurisdiction for criminal aliens with certain convictions, and in 440B, we're going to define the scope of that. This is just simply outside the scope of the jurisdiction stripping statute that was defined when it engaged in enacting that provision. But next, if there's any doubt about this, if ultimately the Court thinks that these other provisions create multiple plausible interpretations of the statutory text, this is where the Court's strong presumption in favor of judicial review of agency action would do the work. Again, it's the government's burden not to show that there are multiple plausible interpretations, but that its interpretation is the only correct one. We think the text is unambiguous in our favor, but if the Court disagrees with it, at the very least, there are multiple plausible interpretations, and there the presumption in favor of judicial review would do the work. And then finally, Congress purposely chose to make CAC claims absolute. Congress, this was a broad recognition to the horrors of torture. When there is an error in the administrative process, as the government just identified below, what that means is a court has found that the administrative agency made an error in saying that torture was not more likely than not. When CAT relief is granted, that means that there is a finding that it is more than 50 percent likely that the individual is going to be tortured or extrajudicially killed upon removal to that country. The United States has made a firm commitment that our deportation system is not going to be used to send an individual to a place where they are more likely than not to be subject to torture or deportation or torture or death. It is completely sensible that Congress did not extend 2C to jurisdiction stripping in these circumstances. Thank you. Roberts. Thank you, counsel. The case is submitted.